# HUNGERFORD VS. WINNEBAGO TUG BOAT & TRANSPORTATION COMPANY.

*Delivery of logs : Carrier and consignee.*

1. Bulky articles (as well as others) cannot be deemed to have been *delivered* by *carrier* to *consignee* before the latter has *access* to them, or may obtain possession or control of them from the carrier; unless there be some peculiar usage or regulation known and assented to by the consignee, taking the case out of the general rule.

2. Such articles cannot be regarded as delivered so long as the actual possession of the carrier and exclusion of the consignee occur and are continued at the instance and *for the convenience of the carrier.*

3. The question was, whether a raft of logs belonging to the plaintiff had been delivered to him by the defendant company at a certain bay; and there was evidence that during all the time said raft was tied up in said bay, and until it was taken away, with others, beyond plaintiff's reach, it was in the middle of a fleet of logs, composed of rafts

belonging to various persons, which had been brought down the river by defendant; that it was inaccessible to plaintiff; that the latter had made different applications to the defendant company's superintendent to have the raft delivered to him before the removal of the fleet, and such delivery had been denied or excused on account of the inconvenience and danger of separating the fleet for that purpose. An instruction given that "the delivery was good if the logs were tied up securely at the place of destination, and notice thereof given to plaintiff," and refusal to charge that "as long as the logs remained in the middle of the fleet and inaccessible to plaintiff, they were in defendant's possession"— *Held*, erroneous.

APPEAL from the Circuit Court for *Winnebago* County.

The defendant, as a common carrier, in the fall of 1869, agreed to tow for plaintiff a crib of pine logs from a boom in Winnebago county to the city of Oshkosh, and there deliver them to plaintiff's order. This action was brought to recover the value of said logs, plaintiff alleging that they had never been delivered to him. The answer alleges that defendant did tow the logs to Oshkosh and deliver them to plaintiff.

It appears from the evidence that defendant, in the fall of 1869, towed said logs, with many others, to "Tarbell's Bay, a short distance above Algoma bridge," and there tied up the whole fleet for the winter; and that the whole fleet was moved to Fond du Lac in the following spring. It would seem from the evidence that Tarbell's Bay is within the limits of the city of Oshkosh; but the proof was clear and uncontradicted (so far as appears from the printed bill of exceptions) that by defendant's custom, a contract to tow logs to Oshkosh bound it to take them through the Algoma bridge and other bridges, and drop them at any mill or other suitable point on the river which might be designated by the owner or consignees. Defendant's contention was, that plaintiff accepted a delivery of the logs at Tarbell's Bay, and gave one Morley, captain of a tug boat, an order upon defendant for them, engaging him to tow them from said bay to a mill designated by plaintiff. Plaintiff's evidence tended to show that Morley was unable to get possession of the

logs in question at any time before they were removed in the spring, because they were in the midst of the fleet; that the superintendent of the defendant company objected to his disturbing the fleet; and that both before and after the order was given to Morley, said superintendent agreed with plaintiff to drop the logs at a certain mill in the city, when the fleet should be moved in the spring.

The court instructed the jury, in substance, that if there was no designated point in the city of Oshkosh where the logs were to be delivered, then a delivery anywhere within the city limits would be sufficient; but if there was any agreement to transport them to any particular point, or if, by the custom which had been proven, known to both parties, there was a particular point where they were to be delivered, defendant was bound to deliver them there; that if these logs were towed to the place where they were to be left, were tied up there, and the plaintiff notified of the fact, the defendant's duty was discharged, and it was no longer responsible for their safe keeping; that if Tarbell's Bay was not the point of destination, within the meaning of the contract, defendant was responsible for them so long as they remained tied up there; but that plaintiff had a right to receive them from the carrier *in transitu*, and if he knew where they were, and agreed to take them there, and did take a delivery of them there, then the carrier was discharged, no matter what subsequently became of the logs; that if, from the evidence as to the direction given to Capt. Morley, the jury found that the logs were delivered to plaintiff at Tarbell's Bay — "that he had accepted them there, and agreed to take them from there, and made a contract to have them removed from there, in other words had received a delivery of them while *in transitu* — then from that time the carrier was no longer responsible."

The following instructions proposed by the plaintiff, were refused: " 1. If plaintiff authorized Morley to get the logs at Tarbell's Bay, and Oleson [the superintendent of the defendant

company] directed his captains to leave them there, this was no delivery, unless you find that defendant separated these logs from the rest of the fleet, and left them secured at that place in a position where they were accessible.    2. If plaintiff authorized Morley to get the logs, and Oleson directed his captains to leave them there at Tarbell's Bay, but afterwards refused to permit Morley to take them, it was no delivery.    3. To constitute a delivery to Morley, he must have had notice of the breaking up of the fleet.    4. If Morley did have authority to get the logs, this did not relieve defendant from its liability, unless the logs were delivered to him.    5. As long as these logs remained in the middle of the fleet, and inaccessible to plaintiff or to Morley, they were in the possession of the defendant."

The jury, after retiring, returned into court and stated that they were unable to agree.    A juror stated that he thought the principal difficulty was in the question, whether the employment by plaintiff, after having notice that the logs were in a certain place, of another man to take charge of them, released the company from further liability.    The court answered, that, " if the logs had arrived at their point of destination, and were safely and securely tied up, and the consignee notified, the carrier was no longer responsible for them; if they had not arrived at their place of destination, but were *in transitu*, and the consignee agreed to take them at the place where they were, and the shipper [carrier] assented to his taking them there, and they were safely and securely tied up at that time, and the consignee employed another carrier to remove them from that place, that was a good delivery to the consignee."

Verdict for the defendant; and from a judgment thereon, plaintiff appealed.

*Geo. W. Burnell*, for appellant, to the point that there was no delivery of the logs because they were *inaccessible* to plaintiff in the middle of a fleet, which he was forbidden to disturb, cited *Graves v. Steamboat Co.* (Sup. Ct. of Conn.), Am. Law Reg. for

January, 1873, p. 23, and note of Judge REDFIELD, with authorities there cited; 18 Wis., 345; 24 id., 566; 30 id., 689; 23 Vt., 186; 42 id., 700, 705.

*Finch & Felker*, for respondent:

A delivery within the city limits at the customary place of deposit, and notification to the consignee of their arrival, relieved the carrier from responsibility. Story on Bailm., § 543; 18 Vt., 131; 17 Wend., 305; 10 Met., 472; 6 Whart., 505; Angell on Carriers, § 313. The place and manner of delivery may be changed by agreement of the parties. Story on Bailm., §§ 540, 541; 23 Wend., 308; 4 Bos. & Pul., 16; Angell on Carriers, § 281. The consignee might waive a part of his rights touching the delivery; and if he took charge of the logs before they arrived at the ultimate place of delivery, the carrier's risk terminated. *Stone v. Waitt*, 31 Me., 411, 412.

DIXON, C. J. The testimony tended conclusively to show that during all the time the plaintiff's raft remained tied up at Tarbell's Bay, and until it was with others taken by Mihill's boat and towed to Fond du Lac, it was in the middle of a fleet of logs composed of a large number of rafts belonging to other persons, and which fleet had been brought down the river by the defendant company's boat and tied up at the bay. The raft of the plaintiff was a part of the fleet towed down by the company. It was in the midst of the fleet, surrounded by other rafts, and inaccessible to the plaintiff, and so continued until the fleet was taken and removed to Fond du Lac. The plaintiff, by himself and his agent, had made different applications to the superintendent of the company to have the raft delivered to him before the removal of the fleet to Fond du Lac, and such delivery had been denied or excused on the ground of the inconvenience and danger of separating the fleet so as to take the raft out. The superintendent testified that on one of those occasions he promised the plaintiff that he would separate and deliver the raft when he moved the fleet, as he

at that time expected to do. He also testified that he told the plaintiff that he would prefer that neither the plaintiff nor his agent should go there and take out the raft.

In view of this evidence, and of the undisputed fact that the raft was at all times inaccessible to the plaintiff, and was so kept and retained by the defendant for its benefit and convenience, we are satisfied that the court erred in its instructions, and misled the jury upon the question of what would constitute a good delivery of the logs to the plaintiff. The court charged that the delivery was good, if the logs were securely tied up at the place of destination, and notice thereof given to the plaintiff. The court omitted the most important inquiry raised by the testimony, which was that of *accessibility*, or whether the delivery was such that the plaintiff could receive and take away the logs according to the custom among owners of that kind of property which had been so transported. It cannot be true, as it seems to us, of bulky articles, any more than of any others, that they can be deemed to have been delivered by the carrier to the consignee before the latter has access to them, or can obtain possession or control of them from the carrier, unless there be some peculiar usage or regulation known and assented to by the consignee, taking the case out of the general rule, and making that a delivery which otherwise clearly would not be. No such usage or regulation was claimed or shown. And especially do we think it is untrue, even of bulky articles, that they can be regarded as delivered when the possession of the carrier and the exclusion of the consignee occur and are continued at the instance of the carrier and for his convenience and advantage. The goods thus remaining in the possession of the carrier, and so situated and held by him that the consignee cannot obtain possession of them as is customary among owners of goods and articles of the kind, cannot be said to have been delivered to the consignee. They are still under the dominion of the carrier, and he is responsible as such for their destruction or loss. The court failed to

submit the case upon, or to instruct the jury respecting, this important proposition, clearly involved; and the exception by the plaintiff to the charge was well taken on that ground.

The fifth request to charge made by the plaintiff, as probably also the others respecting the question of delivery, was correct, and should have been given.

*By the Court.* — Judgment reversed, and a *venire de novo* awarded.